UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID A. LARSON,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>JAY INSLEE, et al.,<br><br>　　　　　　　　Defendants. | No.  2:21-cv-1596-BJR<br><br>ORDER ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

In this case, Plaintiff David Larson challenges orders issued by Defendants Jay Inslee, Governor of the State of Washington, and Dr. Jeff Duchin, the King County Health Officer, that require attendees at large indoor events to show proof of being fully vaccinated against COVID-19 or proof of a recent negative result from a COVID-19 test if they are 12 years old or older. Plaintiff seeks a temporary restraining order (TRO) to restrain enforcement of these orders.  Dkt. No. 3.  Specifically, Plaintiff seeks a TRO so that he may attend a college basketball game in Seattle on December 4, 2021, between Gonzaga University and the University of Alabama (which Plaintiff refers to as "the Battle in Seattle") without showing proof of COVID-19 vaccination or a recent negative COVID-19 test.

Having reviewed the materials submitted by the parties, the Court DENIES Plaintiff's motion for a TRO for the reasons set forth below.

ORDER - 1

## I.     Background

Plaintiff filed this action on November 29, 2021.  Plaintiff's complaint challenges two orders issued by Defendants ("the Orders").

First, Plaintiff challenges Proclamation 21-16, which Defendant Inslee issued on October 18, 2021, and which went into effect on November 15, 2021.  Dkt. No. 4-1.  This proclamation is entitled "Large Event COVID-19 Vaccine Verification" and prohibits any person 12 years old or older from attending a "Large Event"[1] in person unless the person has:  (1) been fully vaccinated against COVID-19 and provides proof thereof to the event organizer; or (2) received a negative COVID-19 test within 72 hours preceding attendance at the event and provides proof thereof to the event organizer.

Second, Plaintiff challenges an order issued by Defendant Duchin on September 16, 2021, which took effect on October 25, 2021.  Dkt. No. 4-2.  The order is entitled "Revised Local Health Officer Verification of Vaccination Order" and requires patrons or customers 12 years old or older at the following public events and establishments in King County to provide verification that they are fully vaccinated against COVID-19:  (1) outdoor recreational and entertainment events with 500 or more people; (2) indoor restaurants, bars, and taverns with seating capacity of 12 and more, and indoor entertainment and recreational establishments.[2]  The

---

[1] The term "Large Event" is defined in the Proclamation as "(1) any ticketed or preregistered assembly of 10,000 or more individuals at an outdoor venue that has defined entrances and exits, or (2) any ticketed or preregistered assembly of 1,000 or more individuals at an indoor venue that has defined entrances and exits."  *Id.*

[2] The Order lists the following examples of indoor entertainment and recreational establishments:  Gyms, fitness facilities, public pools, entertainment and performing arts venues, night clubs, music and concert venues, movie theatres, museums, collegiate and professional sports stadiums and arenas, exhibition halls, and convention centers.  The Order also applies to indoor restaurants, bars, and taverns with seating capacity of less than 12 effective December 6, 2021.  *Id.*

ORDER - 2

order provides that as an alternative to providing vaccine verification, a patron or customer may provide proof of a negative COVID-19 test administered within the previous 72 hours.

Plaintiff alleges that as a result of these Orders, he is "unlawfully prohibited from attending meetings and other functions at restaurants, work[ing] out at a government owned community center/gym, watch[ing] a movie at his local movie theater, attend[ing] sporting events and attend[ing] other large events without being forced to disclose his private medical status as a condition of entry and without fear of criminal prosecution." Dkt. No. 1 at 4. Plaintiff maintains that Defendants "have no statutory or constitutional authority to create or enforce the requirements and prohibitions complained of in this action." *Id.*

Plaintiff's complaint lists six causes of action, which are labelled as: (1) Violation of Article IV § 4 of the U.S. Constitution and Washington Constitution, Article I, § 1; (2) Violation of Fourth Amendment of the U.S. Constitution and Article I § 7 of the Washington State Constitution and Violation of Right to Privacy and Bodily Integrity; (3) Violation of the First Amendment to the U.S. Constitution and Article I § 4 of the Washington Constitution; (4) Violation of Freedom of Conscience and Religious Liberty, 42 U.S.C. 2000a and Article I, §§ 7 and 11 of the Washington Constitution; (5) Violation of the Fourteenth Amendment of the U.S. Constitution and Article I § 12 of the Washington Constitution; (6) Injunctive Relief and Declaratory Relief.

Plaintiff's complaint seeks a declaration that both of the Orders are invalid and unenforceable. Plaintiff also seeks injunctive relief to restrain Defendants from enforcing the Orders.

Concurrently with his complaint, Plaintiff filed a Motion in Support of Temporary Restraining Order and Declaratory and Injunctive Relief. Dkt. No. 3. Plaintiff's motion requests

ORDER - 3

that the Court issue: (1) "a temporary restraining order as to the Battle in Seattle on December 4, 2021," and (2) "a preliminary injunction on the merits of the remainder of Plaintiff's claims in this matter." *Id.* at 2. Plaintiff's motion also states that "there are only legal questions at issue" and requests "that this Court consolidate the preliminary injunction hearing with the trial on the merits and rule on the merits in accordance with [Fed R.] Civ. P. 65(a)(2)." *Id.* at 1.

The Court provided Defendants until 4:00 pm on Wednesday, December 1, 2021, to respond to Plaintiff's motion to the extent that Plaintiff seeks a TRO. Defendants filed their response in a timely manner and oppose Plaintiff's request for a TRO. The Court finds that this matter may be decided on the papers submitted by the parties and that oral argument is not necessary.

## II. Discussion

### A. Standing

Defendants argue that the Court lacks subject matter jurisdiction because Plaintiff's complaint fails to establish that he has Article III standing. Defendants argue that Plaintiff's complaint fails to allege facts demonstrating that he has suffered or will imminently suffer an "injury in fact" that is both "concrete and particularized." Defendants maintain that the injuries alleged by Plaintiff are not "particularized" but are instead "generalized grievances" that do not satisfy the injury in fact requirement. Defendants argue that "the Court should not only deny the TRO Motion but dismiss the complaint." Dkt. No. 20 at 12.

In light of the necessarily short time frame for briefing Plaintiff's request for a TRO, Plaintiff has not had an opportunity to respond to Defendants' arguments on standing. Therefore, the Court will defer consideration of Defendants' arguments on standing at this time.

ORDER - 4

As discussed below, even assuming for the purposes of the pending motion that Plaintiff has standing to maintain his claims, the Court finds that Plaintiff is not entitled to a TRO.

**B.     Plaintiff's Request for a TRO**

"The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction." *Dawson v. Asher*, 447 F. Supp. 3d 1047, 1049 (W.D. Wash. 2020). Like a preliminary injunction, a TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

To obtain a TRO or a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. When the government is a defendant, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Under Ninth Circuit law, courts may apply a "sliding scale" test in evaluating these requirements. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). Under this test, relief may be granted if a plaintiff demonstrates "serious questions going to the merits" and that the "balance of hardships . . . tips sharply towards the plaintiff," so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.* at 1135.

**1.     Plaintiff Has Not Shown A Likelihood of Success on the Merits**

As Defendants note, Plaintiff's motion for a TRO does not include arguments on all of the claims asserted in his complaint, but is based on three theories: (1) that the Orders violate Article IV, § 4 of the U.S. Constitution, which is known as the Guarantee Clause; (2) that the

ORDER - 5

Orders exceed Defendants' powers under Washington statutes; and (3) the Orders are invalid under the non-delegation doctrine under the Washington Constitution.

### a. The Guarantee Clause

The Guarantee Clause provides that the United States "shall guarantee to every state in this Union a Republican Form of Government . . . ." However, as Defendants note, the U.S. Supreme Court "has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable claim." *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (2019) (citing *Pac. States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118 (1912)). Here, Plaintiff has not cited case law in which the Guarantee Clause was the basis for a justiciable claim, although he points to a 1992 decision by the U.S. Supreme Court which stated "recently, the Court has suggested that perhaps not all claims under the Guarantee Clause present nonjusticiable political questions." *New York v. United States*, 505 U.S. 144, 185 (1992). Given the lack of case law supporting Plaintiff's arguments, the Court finds that Plaintiff has not demonstrated a likelihood of success on his claims under the Guarantee Clause.

### b. Defendants' Powers Under Washington State Law

Defendants also argue that to the extent Plaintiff seeks a TRO based on allegations that Defendants violated Washington state law by exceeding their powers, such relief is barred by the Eleventh Amendment to the U.S. Constitution. Defendants point in particular to the U.S. Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). In *Pennhurst*, the Court noted that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law" and concluded that "[s]uch a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Id.* at 106. Defendants also argue that several other

ORDER - 6

federal courts have declined to enjoin COVID-19 executive orders based on state-law claims. Dkt. No. 20 at 16 (collecting cases). By contrast, Plaintiff has not pointed to cases in which a federal court has issued injunctive relief based on alleged violations of state law by state officials. Therefore, to the extent that Plaintiff request for a TRO is based on allegations that Defendants exceeded their powers under state law, the Court finds that Plaintiff has not shown a likelihood of success.

    **c. Non-Delegation Clause**

Similarly, Defendants argue that the Eleventh Amendment bars Plaintiff's claims that the Orders are invalid under the non-delegation doctrine, which Defendants describe as "a state-law separation of powers principle (and a theory found nowhere in the Complaint)." Dkt. No. 20 at 13. For the reasons discussed above, the Court finds that Plaintiff has not demonstrated a likelihood of success on his claims to the extent they are based on the non-delegation doctrine under the Washington Constitution, given the barriers under the Eleventh Amendment to seeking such relief in federal court.

    **2. Plaintiff Has Not Shown He is Likely to Suffer Irreparable Harm**

Plaintiff alleges that he will suffer irreparable injury if a TRO does not issue because the "Battle in Seattle" is "a once in a lifetime event and money damages would not replace the in-person experience." Dkt. No. 3 at 3. Plaintiff also "suggests a good faith extension of the law to shift the burden to the defendants to show the absence of irreparable injury; government officials should not be allowed to act beyond their authority and then shift the burden to others to prove harm as a way to dodge immediate responsibility for their actions." *Id.* at n.6.

The Court finds Plaintiff's arguments totally unpersuasive. As Plaintiff should be aware, clear and repeated precedent established by the U.S. Supreme Court and the Ninth Circuit Court

ORDER - 7

of Appeals squarely places the burden on Plaintiff to show that he is likely to suffer irreparable harm if injunctive relief is not granted. *See, e.g.*, *Winter*, 555 U.S. at 22 (noting "[o]ur frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction.") (emphasis omitted).

Here, the Court finds that Plaintiff has not demonstrated that he is likely to suffer irreparable injury if a TRO does not issue. The Court does not regard the possibility that Plaintiff may be unable to attend the "Battle in Seattle" in person to be an irreparable injury. As Defendants note, Plaintiff may view the game on television if he chooses not to comply with the requirements for attendance. Plaintiff points to *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2000) (per curium) for the proposition that "remote viewing is not the same as personal attendance." However, as Defendants note, the Supreme Court made that statement "in the context of excluding worshippers from religious services (with no testing or vaccination option), not attendance at a sporting event." Dkt. No. 20 at 24. The potential injury from being unable to attend a basketball game in person is not comparable nor of the same constitutional dimension as being unable to attend religious services.

Plaintiff also suggests that he would suffer irreparable harm because the loss of constitutional freedoms "for even minimal periods of time . . . unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). However, Plaintiff has not shown a likelihood of success on his claims that his constitutional freedoms are violated by the Orders.

Therefore, the Court finds that Plaintiff has not shown that he is likely to suffer irreparable harm if a TRO is not issued.

ORDER - 8

### 3. The Balance of Equities and the Public Interest Do Not Weigh in Favor of Plaintiff

As noted above, the questions of whether the balance of equities tips in favor of the party seeking a TRO and whether such relief is in the public interest are merged when the government is the defendant. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Here, Plaintiff makes little attempt to show that the balance of equities weighs in his favor; instead, Plaintiff argues that "[t]his element of injunctive relief unfairly shifts the burden away from government officials acting outside of their authority" and that "Defendants should be forced to prove an overarching hardship if relief is granted." Dkt. No. 3 at 5-6. However, as noted above, this Court is ruled by precedent. Recognizing the precedent that places the burden on Plaintiff to demonstrate he is entitled to a TRO, the Court finds that Plaintiff has offered little if any basis to show that the balance of equities tips in his favor.

As for the public interest, Plaintiff argues that this factor is satisfied because "[r]estoring representative government and stopping public officials from acting outside their authority is certainly in the public interest." *Id.* at 6. However, as discussed above, Plaintiff has not shown a likelihood of success on his claims in this Court that Defendants are exceeding their authority. In contrast, Defendants persuasively argue that the Order serves the public interest by preventing the further spread of COVID-19 and addressing the continuing health emergency caused by the virus.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion for a TRO is denied.

The Court notes that Plaintiff's motion also requests a preliminary injunction on his remaining claims. The parties are directed to meet and confer to determine if they can agree on a

ORDER - 9

briefing schedule to the extent that Plaintiff seeks a preliminary injunction in this matter.

Dated: December 2, 2021

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER - 10